Cindy A. WEATHERALL, Plaintiff,

v.

RELIASTAR LIFE INSURANCE
COMPANY, Defendant.

No. 05–C–0348–S.

United States District Court,
W.D. Wisconsin.

Nov. 2, 2005.

Cindy A. Weatherall, Pro se.

Patryk Silver, Borgelt, Powell, Peterson & Frauen, Madison, Wisconsin, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Cindy A. Weatherall commenced this action against defendant ReliaStar Life Insurance Company in Rock County Circuit Court alleging breach of contract and bad faith. Defendant removed pursuant to 28 U.S.C. § 1441(a) because the allegations in the complaint arose pursuant to an employee benefit plan which brought the cause of action under the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). The matter is presently before the Court on plaintiff and defendant's cross-motions for summary judgment. Also before the Court is defendant's motion to strike plaintiff's submissions in support of her motion for summary judgment. The following facts are undisputed.

## BACKGROUND

Plaintiff's late husband Jeffery Weatherall was employed as an assembler at Colfax Corporation–Warner Electric. He obtained a group life insurance policy (the policy) which included accidental death and dismemberment insurance through his employer as part of an employee benefit plan. Defendant ReliaStar Life Insurance Company served as the Claims Administrator and Group Insurer. At the time of Mr. Weatherall's death the policy was in full force and effect. Plaintiff Cindy Weatherall was named as beneficiary of her husband's policy.

On September 18, 2004 Jeffery Weatherall was involved in a fatal motorcycle accident. According to investigators Mr. Weatherall was traveling westbound on C.T.H. X in Turtle Township when he drove off the road onto the north shoulder. After he drove onto the shoulder Mr. Weatherall traveled approximately 76 feet on the edge of the ditch. At that point Mr. Weatherall hit an asphalt driveway. When he hit the driveway Mr. Weatherall and his motorcycle became airborne for an additional 72 feet. The motorcycle's front wheel and fork then impacted with the ground which caused it to flip and travel an additional 56 feet. The impact also ejected Mr. Weatherall from his motorcycle. Mr. Weatherall was pronounced dead at the scene. The Coroner's report and death certificate listed the manner of death as accidental. At the time of the accident Mr. Weatherall's blood alcohol concentration was 0.198 which was more than twice the legal limit in Wisconsin of 0.08.

On October 1, 2004 plaintiff submitted a death claim form to defendant. On her claim form she requested benefits as follows: (1) $30,000.00 for the proceeds of Mr. Weatherall's basic life insurance and (2) $30,000.00 for the proceeds of his accidental death insurance. She requested defendant provide a lump sum payment of $60,000.00.

Defendant responded to plaintiff's claim for benefits by letter dated October 6, 2004. The letter stated in relevant part:

We have completed our initial review of the above referenced claim. The basic life benefit has been approved, and your payment kit should be received shortly. In order to complete our review for the accidental death benefit, some additional information is needed. Please send us a copy of the accident report for September 18, 2004. Please include the toxicology information as well.

Thank you for your cooperation. When the necessary documentation is received, we will be able to continue our review of this claim.

Defendant received the information it requested from plaintiff on October 18, 2004.

By letter dated October 27, 2004 defendant denied plaintiff's accidental death claim. In the letter defendant explained the basis for its denial of plaintiff's claim as follows:

We have completed our review of the above referenced claim for life insurance benefits and have determined that no Accidental Death benefit is payable. In making our determination we reviewed the Death Claim form, the death certificate, the group life insurance enrollment form, the Rock County Coroner's Report, Coroner's Report of Motor Vehicle Death, and the group policy.

Under the policy, the AD & D benefit is payable if the insured loses his/her life, limb or sight due to an accident. The policy defines an accident as an unexpected, external, violent, and sudden event.

According to the information we have received, your husband was injured when he lost control of the motor vehicle he was operating. The toxicology report shows that your husband's blood alcohol concentration was 0.198. Wisconsin law presumes legal intoxication for the purposes of driving under the influence of alcohol at 0.08 blood alcohol concentration.

We believe that the injury that resulted in your husband's death was not expected [1], given that he was operating a mo-

---

**1.** Given the context of the letter the Court presumes defendant meant to insert the word

tor vehicle while intoxicated. Since it was not unexpected, it was not an accident as defined in the policy, and we must deny the claim for Accidental Death benefits.

In its letter defendant informed plaintiff of her right to appeal its decision. Defendant also advised plaintiff could submit any additional information she wished defendant to review during the course of her appeal.

Plaintiff appealed the denial of her claim on November 12, 2004. Defendant responded by letter on November 19, 2004. The letter stated in relevant part as follows:

We have received your appeal of our denial for Accidental Death benefits under the above policy.

Because the life insurance plan is governed by ERISA your appeal has been forwarded to the ERISA Appeal Committee for review. They will complete their review within 60 days of the date of your letter. When the review is complete you will be notified of their decision.

Our denial of the Accidental Death benefit was based on the definition of an accident.

According to the toxicology report, Mr. Weatherall had a blood alcohol level of .198. Wisconsin law presumes legal intoxication for the purposes of driving under the influence of alcohol at .08 blood alcohol concentration. We believe that the injury that resulted in Mr. Weatherall's death was not unexpected, given that he was operating a motor vehicle while intoxicated.

Plaintiff did not submit any additional information to defendant for its review of her appeal. On December 30, 2004 defendant sent plaintiff a letter informing her of its final decision concerning her claim. Defendant upheld its previous denial decision:

...The ERISA Appeals Committee has reviewed the claim file and all documents contained in it and have determined that the accidental death benefit is not payable.

The Group policy defines an accident as an unexpected, external, violent and sudden event.

According to the information we have received, Mr. Weatherall's death occurred as a result of multiple head and chest trauma that he received when he lost control of the motorcycle he was riding and was ejected from the motorcycle striking the ground. Wisconsin law has determined the blood alcohol legal limit at .08% for purposes of determining driving under the influence of alcohol. Mr. Weatherall's blood alcohol was determined to be .198%. This is more than 2 times the legal limit in the state of Wisconsin.

It is the decision of the ERISA Appeals Committee to maintain the denial of this claim because we believe Mr. Weatherall's death was not unexpected because he put himself in a position in which he should have known serious injury or death could occur. We believe that an individual driving with a blood alcohol level above the legal limit knowingly puts themselves at risk for serious injury or death.

Accordingly, defendant paid plaintiff a total of $30,000.00 plus $65.10 in interest in basic life insurance benefits.

## MEMORANDUM

Plaintiff argues she is entitled to summary judgment because the policy did not exclude coverage for an injury that was unexpected rather than expected.

purposely self-inflicted and defendant's decision to incorporate that exclusion into the stated definition of accident was arbitrary and capricious. Defendant argues it is entitled to summary judgment because Mr. Weatherall's death was a reasonably foreseeable consequence of driving while intoxicated. Accordingly, defendant argues his death was not an accident as defined by the accidental death policy and its decision to deny plaintiff's claim was not arbitrary and capricious.

As a preliminary matter the Court has before it defendant's motion to strike plaintiff's submissions in support of her motion for summary judgment. Defendant argues the State of Wisconsin Alcohol & Other Drug Countermeasures 2004 Report should be stricken because plaintiff did not submit it in support of either her initial claim for benefits or her administrative appeal. Plaintiff did not respond to defendant's motion.

When a plan participant challenges a denial of benefits pursuant to the provisions of ERISA the denial is to be reviewed de novo unless the benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–957, 103 L.Ed.2d 80 (1989). Where an ERISA plan gives the administrator such discretion its decision is reviewed under the arbitrary and capricious standard. *Id.* at 115, 109 S.Ct. at 957.

■ The claim procedures section of the policy at issue here is listed in the summary plan description. It reads in relevant part "ReliaStar Life has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance." Accordingly, the plan grants discretion to the administra-

tor and its decision will be reviewed under the deferential arbitrary and capricious standard.

■ Deferential review of an administrative decision means review on the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan,* 195 F.3d 975, 981–982 (7th Cir.1999). Accordingly, where the question is whether a decision was arbitrary and capricious "courts are limited to the information submitted to the plan's administrator." *Id.* at 982 (citations omitted). Plaintiff did not submit the Wisconsin Alcohol & Other Drug Countermeasures 2004 Report in support of either her initial claim for benefits or her administrative appeal. Accordingly, it was not part of the administrative record and the Court cannot consider it as evidence in support of her motion for summary judgment.

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 55(c).

When the material facts are not in dispute as is the case here the "sole question is whether the moving party is entitled to judgment as a matter of law." *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir.1997) (quoting *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 978 (7th Cir.1996) citing *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1014 (7th Cir.1996)).

Under the arbitrary and capricious standard it is not the Court's function to decide whether defendant reached the correct conclusion or "even whether it relied on the proper authority." *Kobs v. United Wisconsin Ins. Co.,* 400 F.3d 1036, 1039

(7th Cir.2005) (citing *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1379 (7th Cir.1997)). The only question is whether defendant's decision was completely unreasonable. *Manny v. Cent. States, Southeast and Southwest Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 243 (7th Cir.2004).

■ However, the arbitrary and capricious standard does not allow a court to "rubber stamp" an administrator's decision. *Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535, 540 (7th Cir.1996) (citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994)). Factors need to be evaluated to determine if the administrator's decision was reasonable. These factors include: "the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which the decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir.1995) (citing *Exbom v. Central States, Southeast and Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir.1990)). Plaintiff in essence contests the last factor.

■ As an initial matter, defendant argues plaintiff's claims for breach of contract and bad faith should be dismissed because they are state law claims preempted by the provisions of ERISA. ERISA preempts all state laws which "relate to any employee benefit plan" unless the state law "regulates insurance, banking, or securities." *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 657 (7th Cir.1992) (citing 29 U.S.C. § 1144(a) and 29 U.S.C. § 1144(b)(2)(A)). Accordingly, since breach of contract and bad faith claims do not regulate insurance, banking, or securities they are preempted by ERISA. *Id.* at 657–658.

■ However, state law claims can be recharacterized as ERISA claims under ERISA's civil enforcement provision if the following factors are present: (1) "plaintiff is eligible to bring a claim" under the provision; (2) "plaintiff's cause of action falls within the scope of an ERISA provision" that he or she can enforce through the civil enforcement provision; (3) "plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir.2000) (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir.1996)).

Plaintiff's claims are properly recharacterized as a claim for benefits pursuant to the provisions of ERISA. First, as a beneficiary she is eligible to bring an action under the civil enforcement provisions. *See* 29 U.S.C. § 1132(a)(1)(B). Second, she is seeking to recover benefits due her under the terms of the plan which falls within the scope of § 502(a)(1)(B). Finally, plaintiff's claims satisfy the third factor because they require an interpretation of the insurance contract. Accordingly, the Court recharacterizes plaintiff's claims as a claim for benefits pursuant to the provisions of ERISA and will not dismiss the action on the basis of preemption.

■ Next, plaintiff and defendant both argue they are entitled to summary judgment based on the definition of accident listed in the policy. The policy defines an accident as an "unexpected, external, violent and sudden event." Neither side disputes the fact that Mr. Weatherall's death was external, violent and sudden. However, plaintiff argues Mr. Weatherall's death was also unexpected because he did not expect to die. Defendant argues Mr. Weatherall's death was not unexpected because he put himself in a position which a

reasonable person should have known could result in injury or death. Accordingly, in determining the soundness of defendant's ratiocination the question is whether its definition of unexpected was completely unreasonable. If it was unreasonable defendant's conclusion that Mr. Weatherall's death was not an accident was arbitrary and capricious. The Court holds defendant's decision was not arbitrary and capricious.

The first question defendant needed to ask when it determined whether the event was an accident was "whether the insured believed that the conduct at issue would result in the sort of injury that was sustained." *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir.1998) (citing *Wickman v. Northwestern Nat'l. Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir.1990), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990)). If the insured did not believe that the result would occur defendant was required to consider "whether such an estimation [could] be considered reasonable. If the expectations of the insured were objectively unreasonable, then injuries or death resulting therefrom [were] not accidental." *Id.*

Mr. Weatherall did not expect that his conduct of driving while intoxicated would result in his death. Accordingly, the next question is whether or not that expectation was reasonable. In determining the reasonableness of Mr. Weatherall's expectation defendant needed to consider whether a reasonable person with Mr. Weatherall's background and experience would have viewed the death as highly likely to occur as a result of his intentional conduct in drinking and driving. *See Wickman,* at 1088–1089. The hazards of driving while intoxicated are well-known. The public is continually reminded of the risks of driving while intoxicated especially though the media. It was not unreasonable for defen-

dant to determine a reasonable person with Mr. Weatherall's background and experience should have known that serious injury or death was likely to occur as a result of driving while intoxicated. Accordingly, because Mr. Weatherall's expectations were objectively unreasonable defendant's conclusion that his death was not an accident was sound.

Further, defendant's determination that Mr. Weatherall's death was not an accident was not unreasonable because numerous courts have held when a death occurs as a result of driving while intoxicated the death was not an accident because it was reasonably foreseeable and should have been expected even if it was unintentional. *Cozzie,* at 1110 (citing *Miller v. Auto–Alliance Int'l, Inc.,* 953 F.Supp. 172, 176 (E.D.Mich.1997) and *Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476, 480 (W.D.Tenn.1996)).

The Court's role is not to decide whether defendant's determination was correct. It can only determine whether its decision was reasonable. Accordingly, given the authority that supports defendant's determination the Court cannot conclude its decision to deny accidental death benefits was arbitrary and capricious.

## ORDER

IT IS ORDERED that defendant ReliaStar Life Insurance Company's motion to strike plaintiff Cindy Weatherall's submissions in support of her motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff Cindy Weatherall's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant Reliastar Life Insurance Company's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendant ReliaStar Life Insurance Company against plaintiff Cindy Weatherall dismissing plaintiff's complaint and all claims therein with prejudice and costs.